IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

UNITED STATES OF AMERICA,

    Plaintiff,                              CASE NO. 2:10-cr-00105-GLF -TPK

    vs.

DENNIS M. GRIGSBY,

    Defendant.

## MOTION FOR STAY PENDING APPEAL

Defendant Grigsby submits that he is entitled to a stay of the Court's involuntary forcible medication order pending the outcome of his appeal. Grigsby contends that this motion, along with the previously filed arguments before this Court, entitle him to a stay pending the Sixth Circuit's resolution of this matter.

On July 8, 2011, this Court entered an order granting the United States' motion to involuntarily medicate Defendant Grigsby. Simultaneously with the filing of this motion, the Defendant will be filing a notice of appeal of that decision. Such decision is immediately appealable under the collateral order doctrine. See *United States v. Green*, 532 F.3d 538 (6th Cir. 2008).

Defendant Grigsby submits that, in light of the liberty interests at play, and the irreparable harm he may suffer as a result of the Court's order, a stay is appropriate in this matter.

In order to obtain a stay of a district court's order pending appellate review, the moving party must show: (1) a likelihood of success on the merits, (2) that irreparable harm will occur in absence of the stay, (3) that the stay will not cause substantial harm to others, and (4) the public interest in granting the stay.  *Workman v. Bredesen*, 486 F.3d 896,905 (6th Cir. 2007).

### A.  Likelihood of success on appeal

In order to obtain an order allowing involuntary medication of a criminal defendant, the Government must prove, by clear and convincing evidence, each of the following four factors: "(1) important government interests are at stake; (2) involuntary medication is substantially likely to render the defendant competent to stand trial and substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel at trial; (3) involuntary medication is necessary to further the government's interests, and less intrusive means are unlikely to achieve substantially the same results; and (4) the administration of the drugs is medically appropriate."  *United States v. Payne*, 539 F.3d 505,508 (6th Cir.

2008)(citing *Sell v. United States*, 539 U.S. 166 (2003)).

On appeal, Grigsby will be arguing that the Government failed to meet its burden of proof as to each of these factors. However, for purposes of this argument, Grigsby would focus this Court's attention on factors (2) & (4).

The evidence does not show a "substantial likelihood" of rendering Grigsby competent to stand trial. First, Dr. Lucking testified that up to 30% of patients treated with Haldol have little or no positive response. Further, Lucking testified that as to 6 factors which may indicate a positive response to the treatment, Grigsby only was in the positive sector for two of them.

This Circuit has not yet determined the base threshold necessary to meet a "substantial likelihood" of rendering competence. The Court has determined that "more than 90%" chance of success certainly met this standard. *United States v. Green*, 532 F.3d 538,553 (6th Cir. 2008) Given the evidence presented in the instant case, the likelihood is much lower than 50%. Given that Grigsby's factors place him in the lower 33% of positive responses before treatment would begin, it is highly likely that he will be in the up to 30% that do not respond to the treatment. The evidence and statistical analysis do not warrant a finding of a high likelihood of chance of success, much less the 70% chance found by the Court.

The Court's decision also does not adequately address the second part of this factor; namely, that the treatment will affect Grigsby's ability to assist in his defense.  For instance, use of the drug can lead to tardive dyskinesia. "Tardive dyskinesia is a particularly severe form of EPS characterized by grotesque involuntary movements of the mouth, tongue, lips, and extremities, involuntary chewing movements, and a general sense of agitation." *McNeil v. Wyeth*, 462 F.3d 364,366 (5th Cir.  2006).  In *McNeil*, the evidence produced showed that in long term use (defined in that case as longer than 12 weeks) of Haldol, dyskinesia resulted in up to 25% of cases.  *Id.*  at 372

Certainly, the Court's ruling will require long term treatment. Assuming, in four months, Grigsby becomes competent, he will need to remain on the medicine for the duration of the litigation.  This time span could be in excess of a year (not including any appellate process), which would certainly continually increase the chances of dyskinesia.  If he suffers from these "grotesque involuntary movements", it would certainly significantly detract from his ability to help the defense.  "Whether a particular drug will tend to sedate a defendant, interfere with communication with counsel, prevent rapid reaction to trial developments, or diminish the ability to express emotions are matters important in determining the permissibility of medication to restore

competence." *Sell v. United States*, 539 U.S. 166,185 (2003)

Grigsby also contends that the Government failed to prove that a temporary treatment of Haldol is medically appropriate. In the case of *United States v. Ruiz-Gaxiola*, 623 F.3d 684 (9th Cir. 2010), the court dealt with the Government's request to involuntarily medicate a defendant with Haldol to treat his Delusional Disorder. In finding that the Government had failed to meet the fourth *Sell* factor, the court held

> that the medication will not have any effect after the conclusion of the three- or four-month period unless Ruiz continues to take it, and to do so for an indefinite period of time. From a patient's standpoint, the medical benefit of becoming competent to stand trial for only a few months (even if that outcome were likely) and then returning to his prior state of Delusional Disorder could not outweigh even a minuscule risk of a disfiguring and potentially irreversible side effect. Because the proposed course of medication could be considered medically appropriate treatment only for those patients who expect or hope to continue undergoing it indefinitely (and clearly any patient who must be forced to take the antipsychotic medication involuntarily is not in that category), "the patient's best medical interest" cannot be measured, as the district court and the government did, by evaluating the benefit and risk over the period of the trial only. There is no medical value to a medication regime that alleviates the mental disorder, if it does so at all, only for the short period of time necessary for trial preparation and the trial itself, while creating a risk of side-effects that would render the regime inappropriate for a patient's long-term treatment.

*Id.* at 706

The Court failed to consider that treating Grigsby for a only a four month term will have a significant medical impact, and is highly inappropriate from a medical standpoint. Just as in *Ruiz-Gaxiola*, Grigsby faces significant medical risks in even a short term treatment, and the benefits (if successful) would only be a temporary relief. Upon discontinuation, he would again lapse into the same schizophrenia. This cannot be deemed, under these circumstances, to be medically appropriate.

    B.   Irreparable harm

Grigsby submits that without a stay pending resolution of this appeal, he will suffer irreparable harm.

"The forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty." *Washington v. Harper*, 494 U.S. 210,229 (1990). Further, this is a liberty interest which cannot be re-captured: once involuntary medication begins, its effects on Grigsby's body will be lasting, if not permanent. As set forth in the cases above, the effects of this drug can become permanent quickly; thus, the decision by the Court will have irreparable harm.

    C.   No substantial harm to others

A stay pending disposition of the appeal will not substantially harm the

United States, nor will it harm the public. "Mere delay is not sufficient basis for establishing prejudice." *Smith v. CIR*, 926 F.2d 1470,1481 (6th Cir. 1991). The delay is no different than any other appeal; indeed, this particular appeal will likely be expedited by the Sixth Circuit. Thus, a stay will not cause substantial harm to any other person or entity. Further, Grigsby will remain incarcerated pending the appeal, and subject to therapeutic treatment.

    **D. Public interest in stay**

Finally, it is in the public's interest to allow a stay in this matter, due the extraordinary nature of the Government's request, and society's interest in limiting Government's ability to involuntarily medicate citizens.

In sum, Defendant Grigsby submits that a stay of the Court's order of July 8, 2011 is appropriate an necessary.  For these reasons, as well as in reliance on the previous filings of the defense, Grigsby requests that this Court issue a stay pending disposition in the Court of Appeals.

    Respectfully Submitted,

    STEVE S. NOLDER,
    FEDERAL PUBLIC DEFENDER


    /s/ Kevin Schad
    Kevin Schad
    Assistant Federal Public Defender
    250 E Fifth Street, Suite 350
    Cincinnati OH 45202
    513.929.4834
    Kevin-Schad@fd.org

    Attorney for Defendant
    Dennis M.  Grigsby

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was sent this 11th day of July, 2011, by ECF filing, to the office of the Assistant United States Attorney of record, Dave Bosley.

    /s/ Kevin Schad
    Kevin Schad (0061802)
    Assistant Federal Public Defender